UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| WILLIE ROBINSON for<br>JOHNNY ROBINSON,<br><br>    Plaintiff,<br><br>    vs.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)   Case No.  4:06CV1663 CDP<br>)<br>)<br>)<br>)<br>) |

## **MEMORANDUM AND ORDER**

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner's final decision denying Johnny Robinson's application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq*. and supplemental security income benefits under Title XVI of the Act, 42 U.S.C. §§ 1381 *et seq*. Claimant Willie Robinson brings this action on behalf of her deceased son Johnny Robinson, claiming that he was disabled because he suffered from anemia, Hepatitis C, hypertension, an impairment in his left eye, and an impairment in his right hand. The Administrative Law Judge, however, found that Robinson was not disabled. Because the Administrative Law Judge failed to properly consider whether Robinson's non-exertional limitations diminished his residual functional capacity, I will reverse the ALJ decision and remand to the

Commissioner for another hearing.

## Procedural History

Johnny Robinson filed for a Period of Disability, Disability Insurance Benefits, and Supplemental Security Income Benefits on September 10, 1992. That application was denied on October 29, 1992, and it was not pursued any further.

On December 1, 2004, Robinson filed the current application for a Period of Disability, Disability Insurance Benefits, and Supplemental Security Income payments. The claim was denied initially, and a request for hearing was timely filed. Robinson died on October 30, 2005. His mother, Willie Robinson, proceeded on the claim as a substitute party for the claimant. Ms. Robinson waived her right to a hearing before the Administrative Law Judge. The ALJ issued an opinion on June 12, 2006 upholding the denial of benefits. The Social Security Administration Appeals Council denied Ms. Robinson's request for review on October 19, 2006. The ALJ's determination thus stands as the final determination of the Commissioner. Robinson filed this appeal on November 16, 2006.

## Evidence Before the ALJ

Johnny Robinson was 48 years old when he died on October 30, 2005.

Robinson had a high school education and attended four years of college. In the past, he had worked as a general laborer, however he had not engaged in substantial gainful activity after January 1, 2002.

Robinson began receiving treatment for anemia in 2002. On September 24, 2002, Robinson was diagnosed with iron-deficiency anemia, "most likely related to peptic ulcer disease secondary to heavy alcohol use and also to the use of NSAIDs." Robinson was given a transfusion of four units of packed red cells and was warned to avoid consuming any alcohol. Robinson later received one blood transfusion of four pints on October 1, 2002. Medical records show that on September 19, 2003, Robinson had a hematocrit level of 25.6%. On October 6, 2003, his reading was 25.1%. On November 12, 2003, it was 25%. Despite an ongoing hematocrit below 30%, records do not indicate that Robinson received any further blood transfusions during this period.

Robinson was to start receiving treatment for Hepatitis C as far back as February 20, 2001. However, Robinson needed to abstain from alcohol for at least six months before treatment could begin. As of September 20, 2001, his referral for Hepatitis C treatment was still waiting for him to stop drinking. Robinson was eventually referred to St. Louis Connect Care for Hepatitis C treatment in July of 2002. The medical records show that as of January 21, 2005, he was still drinking

heavily. At that time Robinson admitted to drinking half a pint of whiskey and a 12-pack of beer on weekends.

The record indicates that Robinson received frequent treatment for hypertension as far back as 2001. During a January 21, 2005 medical visit, Robinson indicated that he was taking Norvasc for hypertension.

Robinson's medical visits became less frequent in 2004 and 2005. Robinson received medical treatment on one occasion in January, 2004, and in January, 2005 he was seen for a consultative exam. During this 2005 exam Robinson complained of an impairment in his right hand that caused him to drop items. The record does not reveal an objective medical basis for this claim.

The consultative exam report notes that Robinson was blind in his left eye. Robinson had suffered an injury to his eye several years previously which resulted in a scarred cornea. Though he received surgery for this condition in November, 2003, Robinson's vision remained impaired. Robinson also complained of blurry vision in his right eye; records indicate his uncorrected right eye vision was 20/40.

Robinson died on October 30, 2005 as the result of a massive subarachnoid and intracerebral hemorrhage.

## Legal Standard

A court's role on review is to determine whether the Commissioner's

findings are supported by substantial evidence on the record as a whole. *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001). Substantial evidence is less than a preponderance, but is enough so that a reasonable mind would find it adequate to support the ALJ's conclusion. *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000). As long as there is substantial evidence on the record as a whole to support the Commissioner's decision, a court may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome, *id.*, or because the court would have decided the case differently. *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992). In determining whether existing evidence is substantial, a court considers "evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000) (quoting *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999)).

To determine whether the decision is supported by substantial evidence, the Court is required to review the administrative record as a whole to consider:

(1) the credibility findings made by the Administrative Law Judge;

(2) the education, background, work history, and age of the claimant;

(3) the medical evidence from treating and consulting physicians;

(4) the plaintiff's subjective complaints relating to exertional and non-exertional impairments;

> (5) any corroboration by third parties of the plaintiff's impairments; and
>
> (6) the testimony of vocational experts when required which is based upon a proper hypothetical question.

*Brand v. Secretary of Dep't of Health, Educ. & Welfare*, 623 F.2d 523, 527 (8th Cir. 1980).

Disability is defined in the social security regulations as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. § 42 U.S.C. 416(i)(1); § 42 U.S.C. 1382c(a)(3)(A); § 20 C.F.R. 404.1505(a); 20 C.F.R. 416.905(a). In determining whether a claimant is disabled, the Commissioner must evaluate the claim using a five-step procedure.

First, the commissioner must decide if the claimant is engaging in substantial gainful activity. If the claimant is engaging in substantial gainful activity, he is not disabled.

Next, the Commissioner determines if the claimant has a severe impairment which significantly limits the claimant's physical or mental ability to do basic work activities. If the claimant's impairment is not severe, he is not disabled.

If the claimant has a severe impairment, the Commissioner evaluates whether the impairment meets or exceeds a listed impairment found in 20 C.F.R. Part 404, Subpart P, Appendix 1. If the impairment satisfies a listing in Appendix 1, the Commissioner will find the claimant disabled.

If the Commissioner cannot make a decision based on the claimant's current work activity or medical facts alone, and the claimant has a severe impairment, the Commissioner reviews whether the claimant can perform his past relevant work. If the claimant can perform his past relevant work, he is not disabled.

If the claimant cannot perform his past relevant work, the Commissioner must evaluate whether the claimant can perform other work in the national economy. If not, the Commissioner declares the claimant disabled. § 20 C.F.R. 404.1520; § 20 C.F.R. 416.920.

When evaluating evidence of pain or other subjective complaints, the ALJ is never free to ignore the subjective testimony of the plaintiff, even if it is uncorroborated by objective medical evidence. *Basinger v. Heckler*, 725 F.2d 1166, 1169 (8th Cir. 1984). The ALJ may, however, disbelieve a claimant's subjective complaints when they are inconsistent with the record as a whole. *See, e.g., Battles v. Sullivan*, 902 F.2d 657, 660 (8th Cir. 1990). In considering the subjective complaints, the ALJ is required to consider the factors set out by

*Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984), which include:

> claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the objective medical evidence; (2) the subjective evidence of the duration, frequency, and intensity of plaintiff's pain; (3) any precipitating or aggravating factors; (4) the claimant's daily activities; (5) the dosage, effectiveness and side effects of any medication; and (6) the claimant's functional restrictions.

*Id.* at 1322.

## The ALJ's Findings

The ALJ found that Robinson was not disabled, considering his age, education, work experience and residual functioning capacity. He issued the following specific findings:

1. The claimant met the disability insured status requirements of the Act through June 30, 2005.

2. The claimant did not engage in substantial gainful activity since the alleged onset of disability.

3. The claimant had a medically determinable "severe" combination of impairments at the second step of the sequential evaluation process.

4. The medically determinable impairments did not meet or medically equal any of the listed impairments in appendix 1, Subpart P, Regulation No. 4.

5. Claimant's allegations regarding his limitations were not credible.

6. The ALJ carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments.

7. The claimant retained the residual functional capacity to perform light exertional work. Light exertional work requires a maximum lifting of 20 pounds; a frequent lifting of 10 pounds; and standing or walking for six of eight hours per day.

8. The claimant had past relevant work as a general laborer. However, the claimant could not perform his past relevant work.

9. The claimant was a "younger individual" when he died.

10. The claimant had a high school education and four years of college.

11. The transferability of skills is not material.

12. At his death, the claimant had the residual functional capacity to perform a significant range of light and sedentary exertional work.

13. Medical-Vocational Rule 202.20 directs a find that the claimant was "not disabled" as defined in the Social Security Act.

14. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision.

In his opinion, the ALJ noted that Robinson's compliance with his proscribed medication routine was not well-documented. Additionally, the ALJ found that the record evidence did not strongly support Robinson's claim of hypertension, or his claim of an impairment in his right hand. The ALJ ultimately

concluded that the medical records did not document that any treating physician found or imposed any long term, significant, adverse mental or physical limitations on Robinson's functional capacity.

Discussion

Willie Robinson raises five issues on appeal from the final determination denying disability. First, Ms. Robinson claims that in step 2 of the required analysis, the ALJ failed to adequately consider whether her son's condition satisfied the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Specifically, she alleges that the ALJ did not adequately assess whether Robinson's ailments met the qualifications for a disability under listing 7.02 for chronic anemia. Second, the claimant asserts that the ALJ failed to consider whether Robinson qualified for a listing under 5.02 for recurrent upper gastro-intestinal hemorrhage. Third, Ms. Robinson claims that the ALJ's determination of residual functioning capacity was not based on acceptable medical evidence. Fourth, claimant alleges that the ALJ's assessment of Robinson's credibility as to his subjective complaints did not satisfy the standards set forth in *Polaski v. Heckler*. Finally, she claims that the ALJ's determination of residual functional capacity was defective because, although Robinson suffered from non-exertional injuries, the ALJ failed to base his decision on testimony from a vocational

expert. Because I find that this fifth claim constitutes error that warrants reversal and remand, I will not address claimant's other arguments in this memorandum.[1]

Non-exertional limitations include those "other than [limitations] on strength but which nonetheless reduce an individual's ability to work." *Sanders v. Sullivan*, 983 F.2d 822, 823 (8th Cir. 1992). Examples include "mental, sensory, or skin impairments," as well as impairments which result in "postural and manipulative limitations or environmental restrictions." 20 C.F.R. Part 404, Subpart P, Appendix 2.

Where a claimant suffers from both exertional and non-exertional injuries, Eighth Circuit case law is clear:

> [Where] the claimant suffers from a combination of exertional and non-exertional impairments and the Guidelines indicate that he or she is not entitled to a finding of disability based solely on exertional impairments, the ALJ must then consider the extent to which the claimant's work capacity is further diminished by his or her non-exertional impairments. Where the claimant's relevant characteristics differ in any material respect from those characteristics contemplated by the Guidelines, the Guidelines may not be applied. Instead, the Secretary must produce expert vocational testimony or other similar evidence to establish that there are jobs available in the national economy for a person with the claimant's characteristics.

---

[1] Although I am not reaching claimant's other arguments, I note that the ALJ cited the medical records from the day Robinson died for the propositions that he was still drinking and that he was noncompliant with medications. The records show that Robinson was already unconscious when he arrived at the hospital. Thus, Robinson could not have "indicated" that he was not taking his hypertension medications or that he had a history of heavy alcohol consumption, as the ALJ states on pages 5 and 6 of the decision.

*Thompson v. Bowen*, 850 F.2d 346, 349 (8th Cir. 1988) (quoting *Tucker v. Heckler*, 776 F.2d 793, 795-96 (8th Cir. 1985)). Testimony from a vocational expert is not an absolute requirement. An ALJ may use the Guidelines "even though there is a non-exertional impairment if the ALJ finds, and the record supports the finding, that the non-exertional impairment does not diminish the claimant's residual functional capacity to perform the full range of activities listed in the Guidelines." *Lucy v. Chater*, 113 F.3d 905, 908 (8th Cir. 1997); *Thompson*, 850 F.2d at 349-50. However, even under these circumstances, the Guidelines provide only a "framework," for consideration of how much the individual's work capacity has been diminished, and "full consideration must be given to all of the relevant facts" in the individual case. 20 C.F.R. Part 404, Subpart P, Appendix 2. Whether the non-exertional limitation is a recent development or a life-long condition is irrelevant. *Grissom v. Barnhart*, 416 F.3d 834, 837 (8th Cir. 2005). The ALJ is required to consider the claimant's case in light of the non-exertional limitation, and cannot do so merely by relying on the Guidelines.

Numerous circuit courts have held that a vision impairment in one eye is a non-exertional limitation that precludes strict reliance on the Guidelines. *See, e.g., Skyes v. Apfel*, 228 F.3d 259, 270 (3d Cir. 2000) (reversing and remanding because the ALJ failed to take vocational expert testimony and the Guidelines did not

account for blindness); *Francis v. Heckler*, 749 F.2d 1562, 1567 (11th Cir. 1985) (ALJ failed to find facts supporting his determination that a vision impairment would not significantly limit the range of work available to the claimant); *Cummins v. Schweiker*, 670 F.2d 81, 84 (7th Cir. 1982) (upholding the ALJ's decision because the ALJ went "beyond the grid" and made specific findings supported by the evidence that the claimant's blindness would not interfere with work of which he was exertionally capable). *See also Hedstrom v. Sullivan*, 783 F. Supp. 553, 557-58 (D. Colo. 1992) (invalidating ALJ's decision because it was based on hypothetical questions posed to a vocational expert who was told to assume the claimant's vision impairment would not reduce her vocational potential).

In this case, the ALJ found that the Guidelines set forth in Medical-Vocational Rule 202.20, Table No. 2, Appendix 1, Subpart P of Regulation 4 "directed" a finding that Robinson was not disabled. The ALJ did not use the Guidelines as a "framework," but rather adhered strictly to the Guidelines' terms without considering Robinson's vision impairment. The ALJ noted that Robinson was completely blind in one eye and had uncorrected 20/40 vision in the other, but the his opinion does not discuss at all how this impairment affected Robinson's residual functioning capacity. The ALJ concluded that "little from the medical

records . . . indicates that the claimant's combination of impairments were severe enough to preclude him from performing all work available in the national economy." The ALJ failed, however, to explain how this conclusion was unaffected by Robinson's blindness. The ALJ failed to call a vocational expert, and the ALJ made no findings of fact demonstrating that Robinson's vision impairment was immaterial. The Guidelines make no allowance for vision impairment. As such, the ALJ was required to go "beyond the grid" in assessing Robinson's residual functioning capacity – either by taking testimony from a vocational expert, or by making specific findings of fact demonstrating that Robinson's ability to work was not adversely affected by his vision impairment. By relying solely on the Guidelines to make a finding of no disability, the ALJ failed to adequately consider the facts of Robinson's individual case. For these reasons, Robinson's claim must be remanded to the Commissioner for a new hearing.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is reversed and the case is remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further development of the record as to the effect of claimant's non-exertional impairments.

A separate judgment in accord with this Memorandum and Order is entered this date.

```
_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE
```

Dated this 25th day of October, 2007.